# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TYRONE IGNACIOU LYLES,<br><br>Defendant. | Criminal Action No. TDC-17-0039 |

## MEMORANDUM OPINION

Pending before the Court is Defendant Tyrone Ignaciou Lyles's Motion to Suppress Tangible and Derivative Evidence, in which Lyles seeks suppression of marijuana, firearms, and other evidence seized from his home pursuant to a search warrant on January 8, 2015. After briefing, the Court held a hearing on July 13, 2017, requested supplemental briefing, then held a second hearing on November 16, 2017. For the reasons set forth below, the Motion is GRANTED.

## BACKGROUND

On January 7, 2015, Detective Brian McCloskey of the Prince George's County Police Department ("PGCPD") submitted an Application and Affidavit for Search and Seizure Warrant to a judge of the Circuit Court for Prince George's County, Maryland. Detective McCloskey sought to search Lyles's residence, located in Fort Washington, Maryland, for marijuana, firearms, and other evidence of drug distribution. In his affidavit, Detective McCloskey first stated that during January 2015, members of the PGCPD became "aware of possible connections between [Lyles's] residence, its occupants, and unlawful activities." Search Warrant Affidavit ("Aff.") ¶ 4, Gov't Opp'n Mot. Suppress Ex. A, ECF No. 21-21. The affidavit provided no details about the nature of that information. Detective McCloskey then described the results of a

trash pull conducted on January 5, 2015.[1] He stated that he and another officer had observed four large green plastic bags abandoned at the curb outside Lyles's residence. The officers removed the bags, inspected their contents, and found three plant stems which later tested positive for marijuana, three empty packs of rolling papers, and one document addressed to Lyles's residence. Detective McCloskey stated that based on his knowledge, training, and experience, he was aware that users and distributors of marijuana are likely to store their marijuana in secured locations such as in a residence, and that they often dispose of packaging materials, stems, seeds, and paraphernalia in the trash outside locations where the marijuana is stored. Based on the investigation and the trash pull, as well his "knowledge, training, and experience," he believed that marijuana and handguns were being "stored, used, and/or sold" at Lyles's residence. *Id.* The affidavit provided no explanation for the conclusion that handguns were present inside the residence. Detective McCloskey then requested authorization to search for and seize 13 different categories of evidence, including:

1. Marijuana and any and all controlled dangerous substances ... and such paraphernalia that is used in the administration, preparation, and distribution or in conjunction with said illegal activities;

2. Any books, records, and documents relating to the acquisition, possession, or distribution of said controlled dangerous substances;

3. Any and all safes, locked boxes and receptacles that could contain any other items described in this warrant and ... all contents which pertain to the said illegal activities;

4. [A]ll non-commercially produced video recordings, digital video discs, and any other analog or digital media;

5. Any electronic equipment, such as computers, external hard drives, facsimile machines, digital pagers, cellular telephones, answering machines, surveillance equipment, and related manuals used to generate, record, and/or

---

[1] Detective McCloskey's affidavit erroneously listed the date as January 5, 2014. The Court does not consider the error important with respect to the substantive issues raised by this Motion.

store the information described in this exhibit, and the contents therein ... and computer software, tapes and discs, audio and video tapes and/or discs, and the content therein ... used in the aforementioned violations relating to the transportation, distribution, ordering, and purchasing of controlled dangerous substances.

6. Any and all appointment books, diaries, calendars, financial records, work schedules, computer records, or other documents that detail the aforementioned violations or individuals involved in the aforementioned violations;

7. Any and all financial documents that are related to the placement of monies used in the aforementioned violations;

8. Currency, precious metals, jewelry, and financial instruments, including stocks and bonds; and

9. Firearms, including but not limited to: handguns, pistols, revolvers, rifles, shotguns, machine guns, and any and all other weapons, as well as ammunition.

Aff. ¶ 6.

The judge issued the warrant, authorizing a search of Lyles's residence for the items listed in the affidavit. On January 8, 2015, Detective McCloskey and other PGCPD officers executed the search and seized marijuana, drug paraphernalia, documents, cash, cell phones, other electronic devices, four firearms, and ammunition.

At the November 16, 2017 hearing, Detective McCloskey testified that at the time he sought the search warrant, he had been assisting with a homicide investigation and learned that Lyles's phone number had been found in the victim's cell phone. The lead homicide investigator informed Detective McCloskey that the investigator "had contact" with Lyles "earlier on in his career" and that Lyles "was a drug dealer." Nov. 16, 2017 Hrg. Tr. at 10. In his testimony, Detective McCloskey acknowledged that he chose not to include this information in the affidavit and that he had not inadvertently omitted it. Beyond this information and the results of the trash pull, Detective McCloskey had no other information to support a search of Lyles's residence.

On January 25, 2017, the Grand Jury returned a one-count indictment charging Lyles with possession of firearms and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

## DISCUSSION

In his Motion to Suppress, Lyles argues that the evidence was seized in violation of the Fourth Amendment to the United States Constitution because the search warrant was not supported by probable cause to believe that marijuana and firearms would be found in the residence. The Government counters that the affidavit contained sufficient facts to establish probable cause and that even if it did not, the search and seizure should be upheld under the good faith exception of *United States v. Leon*, 468 U.S. 897 (1984).

### I.      Legal Standard

To assess whether probable cause exists to issue a search warrant requested by law enforcement, a magistrate or other judicial officer must "make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A reviewing court owes the magistrate's probable cause determination "great deference." *Id.* at 236. The reviewing court is to uphold the issuance of the search warrant if there was a "substantial basis" for concluding that probable cause existed. *Id.* For the issuing magistrate to have had a substantial basis for finding probable cause, "[s]ufficient information must be presented" to allow the judge "to determine probable cause"; the magistrate's action cannot be a "mere ratification of the bare conclusions of others." *Id.* at 239.

## II. Marijuana

Lyles argues that the affidavit did not support a finding of probable cause because (1) Maryland has decriminalized possession of a limited quantity of marijuana; and (2) the evidence of marijuana possession was insufficient to support a finding of probable cause. Maryland has decriminalized the possession of less than 10 grams of marijuana, such that a limited quantity of marijuana would not constitute evidence of a crime. Under the Fourth Amendment, however, a search may be conducted if there is probable cause to believe that "contraband *or* evidence of a crime" will be found. *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013) (emphasis added). The Maryland Court of Appeals recently held that, even after decriminalization, "possession of any amount of marijuana ... remains illegal," such that marijuana remains contraband. *Robinson v. State*, 125 A.3d 661, 680, 683 (Md. 2017) (holding that a law enforcement officer may still search a car for marijuana based on an odor of marijuana emanating from the vehicle, because there is probable cause to believe the car contains contraband). "For purposes of probable cause, there is no distinction between the significance of a criminal amount of marijuana versus the significance of a noncriminal—but still illegal—amount of marijuana." *Id.* In so ruling, the court noted that the Maryland marijuana decriminalization statute, Md. Code Ann., Crim. Law § 5-601(d)(2) (West 2002), expressly states that it "may not be construed to affect the laws relating to . . . seizure and forfeiture." *Robinson*, 152 A.3d at 680; *see also Bowling v. States*, 134 A.3d 388, 398 (Md. Ct. Spec. App. 2016) (holding that post-decriminalization, an officer still has probable cause to search a vehicle based on an odor of marijuana because marijuana remains contraband); *Scott v. State*, No. 1698, 2016 WL 3959806, at *1 (Md. Ct. Spec. App. July 22, 2016) (upholding a search of a residence based on an odor of marijuana). Thus, Maryland's

decriminalization of possession of a limited quantity of marijuana does not provide a basis to invalidate the search.

Nevertheless, Lyles argues that the evidence relating to marijuana offered in the affidavit to support the issuance of a search warrant was insufficient. As the affidavit contained no details regarding the investigation into Lyles's residence, the facts supporting the presence of marijuana in Lyles's residence as of January 7, 2015 consisted of only the items found in the trash pull: three marijuana plant stems, three empty packs of rolling papers, and one document addressed to Lyles's house. Courts have reached disparate results on whether the recovery of evidence relating to drugs from the trash outside a house suffices to support a finding of probable cause to search the residence. In *United States v. Allebach*, 526 F.3d 385 (8th Cir. 2008), the United States Court of Appeals for the Eighth Circuit held that the recovery from the trash outside a house of two plastic bags with cocaine residue, two corners torn from plastic bags, Brillo pads, and a film canister with white residue was sufficient to establish probable cause to the search the residence. *Id.* at 387. Likewise, in *United States v. Briscoe*, 317 F.3d 906 (8th Cir. 2003), the court held that 40 marijuana seeds and 25 marijuana stems found in the trash outside a residence were "sufficient stand-alone evidence to establish probable cause" to search the house. *Id.* at 908. The court concluded that "the presence of discarded marijuana stems and seeds reasonably suggest that ongoing marijuana consumption or trafficking is occurring within the premises" and that in any event "simple possession of marijuana seeds is itself a crime." *Id.*

In contrast, in *United States v. Abernathy*, 843 F.3d 243 (6th Cir. 2016), the United States Court of Appeals for the Sixth Circuit concluded that a trash pull revealing several marijuana roaches with marijuana residue inside, several plastic bags with marijuana residue that were consistent with bags used to package marijuana for resale, and mail addressed to the defendant at

the residence was insufficient to support a finding of probable cause. *Id.* at 247, 254. The Sixth Circuit reasoned that there was no certainty that the roaches and plastic bags with residue came from the defendant's residence or were in the residence recently, and that even if they came from the residence, the small quantity suggested only that someone had smoked marijuana inside the house recently, not that the residence contained additional drugs, because drugs by their very nature "are usually sold and consumed in a prompt fashion." *Id.* at 255 (quoting *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009)). The court distinguished *Briscoe*, noting that the large quantity of drug refuse in that case suggested repeated and ongoing drug activity, while the retrieval of merely "several" items in Abernathy's residence was not enough to suggest "repeated or ongoing marijuana consumption or distribution in the residence" such that there was a fair probability that contraband or evidence of a crime would be found in the home. *Id.* at 255.

Here, there was no evidence in the affidavit of drug use or distribution other than the contents of the trash pull, and the items from the trash were closer in quantity and significance to those in *Abernathy* than in *Briscoe*. The Court agrees with the reasoning of *Abernathy* and concludes that the presence of only three marijuana stems and rolling paper, even if suggesting that someone had used marijuana in the house, does not establish a fair probability that additional marijuana will be found within the home. Thus, the Court concludes that, even under the highly deferential standard, that there was not a "substantial basis" to conclude that there was probable cause to search the residence. *See Gates*, 462 U.S. at 238; *Abernathy*, 543 F.3d at 255.

### III. Firearms

Lyles also challenges the warrant's authorization to search for firearms as unsupported by probable cause. The affidavit was entirely devoid of any facts relating to firearms. The only reference to firearms was the officer's cursory conclusion that drugs and firearms would be

7

found in the home. Although Detective McCloskey stated in the affidavit that he has extensive narcotics investigation experience and has undertaken Gun and Drug Interdiction Training courses, he did not describe the significance of his experience to this particular investigation or search.

Courts have noted the general proposition that firearms are linked to narcotics trafficking. For example, the United States Court of Appeals for the Fourth Circuit has stated, "Guns are tools of the drug trade and are commonly recognized articles of narcotics paraphernalia." *United States v. Ward*, 171 F.3d 188, 195 (4th Cir. 1999). In assessing probable cause, however, the Court relies on the information contained within the four corners of the affidavit. *Gates*, 462 U.S. at 238; *United States v. Hurwitz*, 459 F.3d 463, 470-71 (4th Cir. 2006). Here, the affidavit is entirely silent on any potential connection between firearms and the drug activity at Lyles's residence. Detective McCloskey did not even offer the common conclusory statement that based on his training and experience, firearms are usually found where drug trafficking is occurring.

Even if one could presume that the link between firearms and drug trafficking is self-evident, that conclusion is inapplicable here because the evidence described in the affidavit was so limited and referred to such a small quantity of marijuana that it could not establish probable cause to believe that evidence of drug trafficking or distribution would be found at the residence. Notably, the Government acknowledged at the July 13, 2017 hearing that the affidavit, at most, supports a finding of probable cause to establish illegal drug possession, not distribution. The purported link between firearms and drug dealing does not establish a similar link between firearms and apparent possession of marijuana. Particularly in a state in which limited marijuana possession is not even a crime, and when nothing in the affidavit offered any basis to conclude that an amount of marijuana sufficient to constitute a crime would be found in the residence, it

8

strains credulity to conclude that in any place where marijuana is possessed or used, including a college dormitory or teenager's bedroom, firearms can be expected to be found. The Court therefore concludes that the affidavit does not contain sufficient facts to support a finding of probable cause to believe that firearms would be found in the residence.

## IV. Overbreadth

Lyles further argues that the search should be invalidated because the warrant was overbroad. "The Fourth Amendment requires that a warrant be no broader than the probable cause on which it is based." *Hurwitz*, 459 F.3d at 473 (considering whether a warrant's authorization to seize "all" patient files in a doctor's office was broader than the probable cause identified in the affidavit); *see also In re Grand Jury Subpoenas*, 926 F.2d 847, 857 (9th Cir. 1991). A warrant that uses general terms to describe the object of the search "raises the possibility that there does not exist a showing of probable cause to justify a search for them." *United States v. Griffith*, 867 F.3d 1265, 1275-76 (D.C. Cir. 2017) (quoting 2 Wayne R. LaFave & David C. Baum, *Search & Seizure: A Treatise on the Fourth Amendment* § 4.6(d) (5th ed. 2012)). This requirement that each portion of a warrant be supported by probable cause seeks to prevent a "general, exploratory rummaging in a person's belongings." *Cassady v. Goering*, 567 F.3d 628, 643 (10th Cir. 2009).

Here, the stated justification for the search of Lyles's home was a potential violation of criminal or civil provisions against the possession of marijuana. Yet without any explanation or rationale, the affidavit sought authorization to search for a wide variety of items beyond marijuana, including books, records, diaries, calendars and documents; video recordings, digital video discs and other media; precious metals, jewelry, and financial instruments such as stocks and bonds; electronic equipment such as computers, hard drives, cell phones, and answering

machines; photographs of "assets"; and firearms and ammunition. Aff. ¶ 6. A review of these items listed as subject to seizure reveals that the warrant contemplated a search for evidence of drug trafficking, a crime for which there plainly was no probable cause. *See United States v. Embry*, 625 F. App'x 814, 817 (9th Cir. 2015) (holding that where a warrant authorized a search for drugs, books, records, ledgers, communications technology, travel records, address books, financial records, photographs, digital media, phones, and phone records, "[i]t is clear that the search warrant here was aimed at uncovering evidence of drug trafficking, even though probable cause did not exist to support a search for evidence of drug trafficking"); *United States v. Powers*, 1 F. Supp. 3d 470, 474 (M.D.N.C. 2014) (distinguishing between a search for evidence of drug trafficking and search for evidence of drug possession and finding a lack of probable cause to support either). As with firearms, the general proposition that such items may be seized as evidence of drug trafficking breaks down when the purpose of the search is to find contraband marijuana or evidence of criminal possession of marijuana. Thus, the warrant authorized a broad search "that far outstripped the police's proffered justification for entering the home." *Griffith*, 867 F.3d at 1276.

Furthermore, although some of these items were described as only subject to seizure to the extent that they could be linked to drug activity, several categories had no such limitation. Firearms were subject to seizure regardless of whether they related to marijuana possession. The warrant authorized the seizure of "[c]urrency, precious metals, jewelry, and financial instruments, including stocks and bonds," without requiring any nexus to illegal activity. Aff. ¶ 6. Likewise, "[a]ny and all" photographs, negatives, memory sticks, and slides could seized. *Id.* Among the specific examples of photographs subject to seizure were those of "assets," without any requirement that the assets be connected to drug activity. *Id.* "All electronic equipment,"

such as computers, external hard drives, pagers, cell phones, and answering machines could be seized if they were used to generate "the information described in this exhibit," which could include items unconnected to drug activity such as photographs of assets. *Id.*

In *Griffiths*, the court invalidated a search warrant for a residence not only because there was no probable cause to search for the defendant's cell phone, but also because the warrant was overbroad in allowing the seizure of "all electronic devices found in the residence," without regard to ownership. *Griffiths*, 867 F.3d 1265, 1275-76 (D.C. Cir. 2017). "That expansive sweep far outstripped the police's proffered justification for entering the home." *Id.* at 1276. Likewise, where multiple categories of items to be seized from Lyles's residence were so broadly defined that they were plainly unsupported by probable cause, and many of these items, such as cell phones, stocks and bonds, and other financial instruments were "otherwise lawful objects," the warrant was also invalid because of its overbreadth. *See id.* ("The warrant's overbreadth is particularly notable because police sought to seize otherwise lawful objects."); *see also Hurwitz*, 459 F.3d at 473.

## V. Good Faith Exception

The Court therefore turns to the question whether the search can be upheld under the good faith exception of *Leon*. *See United States v. Legg*, 18 F.3d 240, 243 (4th Cir. 1994). Under *Leon*, even if probable cause has not been established, a court can still uphold the search if the law enforcement officers executing the warrant could objectively rely in good faith on the magistrate's probable cause determination. *Leon*, 468 U.S. at 920. The good faith exception does not apply if the affiant knew there was a false statement in the affidavit, or would have known of such a false statement except for the affiant's reckless disregard of the truth; if the magistrate wholly abandoned a neutral judicial role; if the warrant was so facially deficient, such

as if it failed to identify the items to be seized or place to be searched, that it could not reasonably be deemed valid; or if the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923. Because the first three exceptions do not apply here, the question is whether the information relied upon in the affidavit lacked sufficient indicia of probable cause.

Lyles argues that the good faith exception cannot apply because the affidavit, as the Court described it at the July 13, 2017 hearing, was a "bare bones affidavit." The Fourth Circuit has held that the good faith exception does not apply in the case of a "bare bones affidavit," which it has defined as "one that contains wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. DeQuasie*, 373 F.3d 509, 521 (4th Cir. 2004); *United States v. Wilhelm*, 80 F.3d 116, 122 (4th Cir. 1996). Examples include affidavits in which the officer provided "nothing more than unreasonable reliance on an unknown, unavailable informant without significant corroboration." *DeQuasie*, 373 F.3d at 521 & n.16. Here, the officer made conclusory assertions that he had "become aware of possible connections between the residence, its occupants and unlawful activities" without even attributing them to an informant. Aff. ¶ 1. These assertions were inadequately supported by only a single fact describing items found in the trash, and were followed by naked, unsupported claims that a search would uncover firearms and other evidence linked to drug trafficking. If this affidavit was not a bare bones affidavit, it was very close to being one.

Nevertheless, the Government argues that the good faith exception applies because a reasonable officer could, based solely on the recovery of marijuana stems from the trash pull, believe in good faith that there was sufficient evidence to establish probable cause to search the

12

home for drugs. *See United States v. Boomer*, 165 F. App'x 266, 268 (4th Cir. 2006) (holding that the good faith exception applied where an officer searched a residence for evidence of drug activity in reliance on a warrant supported by the discovery during a trash pull of marijuana stems and seeds, sandwich bags, and mail addressed to the residence). However, unlike in *Boomer*, the warrant here was deficient based not only on the lack of evidence to support probable cause, but also on the warrant's facial overbreadth. In *Griffiths*, the court considered in combination the fact that no part of a search warrant was supported by probable cause and the facial overbreadth of the warrant. 867 F.3d at 1278-79. The court concluded that where there was no probable cause to support a search of the defendant's home for his cell phone as evidence of a crime, and the warrant was facially overbroad because it authorized the seizure of all electronic devices without regard to ownership or nexus to a crime, the good faith exception did not apply. *Id.* ("Taken together, those failings as to probable cause and overbreadth bring the warrant beyond the good-faith exception's reach.").

Other courts have declined to apply the good faith exception based on a warrant that was overbroad because it unjustifiably authorized a wide-ranging search for evidence of drug trafficking. In a similar case, the United States Court of Appeals for the Ninth Circuit held that even when the defendant had acknowledged that he possessed a personal use amount of marijuana, the good faith exception did not apply to justify a search of his residence because the warrant was "facially overbroad," where there was no probable cause to conduct a search for evidence of drug trafficking, yet the warrant authorized a broad search and the seizure of the same kinds of items covered in the present warrant, including books, ledgers, travel records, photographs, digital media, phones, phone records, and firearms. *Embry*, 625 F. App'x at 817; *see also United States v. Kow*, 58 F.3d 423, 428-29 (9th Cir. 1995) (finding that the good faith

exception did not apply where the warrant was facially invalid because it "listed entire categories of documents to be seized, encompassing essentially all documents on the premises"). *Cf. Cassady v. Goering*, 567 F.3d 628, 644 (10th Cir. 2009) (noting that even where there is probable cause to support one part of a warrant, other parts may be "sufficiently broad and pervasive so as to contaminate the whole warrant"). Likewise, in *Powers*, the court held that even if a reasonable officer could have believed that there was probable cause to search a residence for evidence of drug possession, the good faith exception did not apply where there was "a grossly overbroad warrant authorizing a search for drug trafficking . . . which no reasonable officer would have believed was supported by probable cause." 1 F. Supp. 3d at 478.

Here, as discussed above, the warrant was deficient both because no part of it was supported by probable cause and because it was substantially overbroad in that it authorized a search for evidence of drug trafficking and the seizure of certain categories so open-ended that they necessarily included entirely lawful items. The three marijuana stems did not establish probable cause to search for marijuana and certainly did not justify a search for typical evidence of drug trafficking consisting of, or found in, records, ledgers, computers, memory sticks, cell phones, phone records, and firearms, particularly when limited marijuana possession is not even a crime in Maryland. Nothing in the affidavit supported a search for entirely lawful items, such as stocks, bonds, financial instruments, and photographs of assets unconnected to illegal activity. Particularly where the Government has acknowledged that there was no probable cause to search for evidence of drug distribution, no reasonable officer would have believed that this warrant was valid. The Court therefore concludes that the lack of probable cause for the search and the gross overbreadth of the warrant, taken together, put this search beyond the reach of the good faith exception. *See Griffiths*, 867 F.3d at 1278-79.

The Court reaches this conclusion even upon consideration of the additional facts offered at the November 16, 2017 hearing. Under *United States v. McKenzie-Gude*, 671 F.3d 452 (4th Cir. 2011), a court may consider, in assessing the applicability of the good faith exception, "uncontroverted facts known to the officers but inadvertently not disclosed to the magistrate." *Id.* at 458-59. Detective McCloskey testified that Lyles's phone number was found in a homicide victim's phone and that another police officer had told him that he had interacted with Lyles earlier in his career and that Lyles was a drug dealer. Detective McCloskey, however, acknowledged that he chose not to include these facts in the affidavit such that he did not inadvertently fail to include them. Moreover, another officer's conclusory characterization of Lyles as a drug dealer is not the type of "uncontroverted" fact that may be considered under *McKenzie-Gude*, in which the court considered uncontroverted, additional evidence connecting the defendant to the searched residence that the officer had inadvertently failed to disclose to the magistrate. *See id.* at 459-60 (noting that the court's inquiry is limited to facts known to the officer, not to the "subjective beliefs of law enforcement officers" (quoting *Leon*, 468 U.S. at 922 n. 23)); *see also United States v. Campbell*, No. 15-cr-00042, 2016 WL 727110 at *6 (W.D. Va. Feb 22, 2016) (applying *McKenzie-Gude* to uncontroverted facts establishing that the defendant lived at the target residence). Thus, the additional information offered by the Government does not consist of uncontroverted facts inadvertently not disclosed to the magistrate. Accordingly, this information, which in any event would have been of limited or no value, may not be considered as part of the good faith exception analysis. *See McKenzie-Gude*, 671 F.3d at 458-59.

Having found that the search of Lyles's home was not supported by probable cause or protected under the good faith exception, the Court does not reach the Government's argument

that the firearms can be admitted because they were found in plain view during a valid search. Since the PGCPD did not conduct a valid search of Lyles's home, the officers were not lawfully present at the time that they discovered the firearms and thus cannot benefit from the plain view doctrine. *See Horton v. California*, 496 U.S. 128, 136-37 (1990). Likewise, because no part of the warrant, even the search for marijuana as contraband, was supported by probable cause, there is no basis to sever the warrant among valid and invalid portions. *See United States v. Sells*, 463 F.3d 1148, 1151 (10th Cir. 2006) ("If no part of the warrant particularly describes items to be seized for which there is probable cause, then severance does not apply and all items seized by such a warrant should be suppressed").

The search authorized by the warrant is precisely the kind of police activity that must be deterred through application of the exclusionary rule. *See, e.g. Wilhelm*, 80 F.3d at 120-21. Law enforcement officers cannot be led to believe that they can submit such an obviously deficient affidavit, containing only vague allegations of "unlawful activity," virtually no facts, and conclusory claims of the right to search for firearms and other evidence without any explanation, and expect to avoid any adverse consequences. Suppression of the evidence seized from Lyles's residence is therefore warranted.

## CONCLUSION

For the foregoing reasons, the Motion to Suppress is GRANTED. A separate Order shall issue.

Date: November 20, 2017

THEODORE D. CHUANG
United States District Judge

16